UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) ) | Crim. No. 10-128 (RMC) |
| v. | ) ) ) |  |
| KENNETH MILSTEAD | ) ) ) |  |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

Mr. Milstead is before the Court pending sentencing after he entered a guilty plea on July 22, 2010. Mr. Milstead pled guilty to count one of the indictment which charged him with Wire Fraud in violation of 18 U.S.C. § 1343. Pursuant to the conviction Mr. Milstead faces a maximum sentence of twenty years of incarceration, followed by a term of supervised release of not more than three years, a maximum fine of $250,000.00 and a $100.00 special assessment.

In the Pre-Sentence Investigation Report ("PSR"), Probation Officer Sherry Brandon, calculated a sentencing range of 41 to 51 months of incarceration pursuant to the advisory United States Sentencing Guidelines. See PSR¶ 68. The range is based on a Base Offense level 20 and a Criminal History Category III. Undersigned counsel, agrees with Assistant United States Attorney, Dan Friedman, that Mr. Milstead's Criminal History Category is II, and therefore is subject to a sentencing range of 37 to 46 months of incarceration[1]. Mr. Milstead will appear

---

[1]     Sentences for misdemeanors are included *unless* they fall within the limited exception delineated in § 4A1.2©. As relevant here, § 4A1.2(c)(1) excludes from calculation sentences received for fifteen listed offenses "*and offenses similar to them,* by whatever name they are known," if the sentence imposed was less than one year probation or thirty days imprisonment, and the prior offense was not similar to the instant offense. U.S.S.G. § 4A1.2(c)(1) (emphasis added) One of the enumerated excluded offenses is " for insufficient

before the Court for his Sentencing Hearing on September 24, 2010.

The instant offense represents Mr. Milstead's second federal felony conviction. In 1990, nearly twenty years ago, Mr. Milstead committed a bank robbery in a haze fueled by alcohol abuse. The only other conviction is a state conviction for theft in 2003 for which he received a probation sentence. While there is no simple or defensible explanation for Mr. Milstead's conduct, he has taken steps to make amends and to express his remorse for his unlawful conduct.

His road toward redemption began with his immediate resolve to enter a guilty plea. Mr. Milstead agreed to plea guilty after reading the plea agreement for the first time. He did not request additional time to review the plea nor did he make any request for changes in the agreement. His decision to plea was based on the simple fact that he had abused the trust of innocent people in the guise of trying to help their business needs, when all he wanted to do was to deprive them of their money. Mr. Milstead never thought of challenging the allegations since it would have been misleading and dishonest to do so. He recognized that it was through his dishonesty that he hurt innocent people. Mr. Milstead has been shamed by his conduct.

Mr. Milstead wants to prove to the Court, to his family, and the government that he can contribute to his community and live out the remainder of his life in a lawful manner. Mr. Milstead is asking the Court to sentence him to a prison term of thirty-seven months. After his release from custody Mr. Milstead wants to secure employment so that he can pay back the money he embezzled. On account of the totality and circumstance of his life and pursuant to the applicable sentencing statutes, Mr. Milstead respectfully requests that the Court sentence him to a prison sentence of thirty-seven months.

---

funds checks."

I.     **PURSUANT TO <u>UNITED STATES. v. BOOKER</u> AND 18 U.S.C. §§ 3553(a), MR. MILSTEAD RESPECTFULLY REQUESTS A SENTENCE OF THIRTY-SEVEN MONTHS OF INCARCERATION**

Pursuant to <u>United States v. Booker</u>, a sentencing court must consider the recommended guideline range as one of seven co-equal statutory sentencing factors enumerated in 18 U.S.C. § 3553(a). <u>United States v. Booker</u>, 543 U.S. 220, 259-60 (2005). Those factors include: (a) the nature and circumstances of the offense and the history and characteristics of the defendant, (b) the kinds of sentences available, © the guideline range, (d) the need to avoid unwarranted sentencing disparities, (e) the need for restitution, and (f) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence, to protect the public from further crimes of the defendant and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment. *See* 18 U.S.C. § 3553(a).

The primary purpose of the sentencing statute, 18 U.S.C. § 3553(a), is for the sentencing court to impose a sufficient sentence, but not one that is greater than necessary.  18 U.S.C. § 3553(a) allows the Court to take into account the particularized factors of Mr. Milstead's life and not just the fact of his criminal conduct. This approach is consistent with the goals of 28 U.S.C § 991, the enabling statute of the Sentencing Commission.  The enabling statute and the sentencing statue contemplate a flexible and particularized approach to sentencing determinations.  Title 28 28 U.S.C. § 991(b)(1)(B) provides Sentencing Courts with discretion to "maint[ain] sufficient flexibility to permit individualized sentences when warranted by mitigating or aggravating factors not taken into account in the establishment of general sentencing practices." Application of 18 U.S.C. § 3553(a) and 28 U.S.C. § 991(b)(1)(B) support a prison sentence of thirty-seven

months.

### A. The Nature and Circumstances of the Offense

Mr. Milstead's nonviolent criminal conduct is concisely described in the statement of facts and in the Presentence Investigation Report. The criminal conduct encompassed the three years during which Mr. Milstead succumbed to the ravages of alcoholism, an illness that has devastated a significant period of his life. What began as a one time swindle spiraled into repeated behavior that was distinct from any prior criminal conduct that Mr. Milstead had committed. To his credit, Mr. Milstead never denied his criminal responsibility nor minimized his conduct. On the contrary from the moment he was presented with the indictment and the plea agreement, Mr. Milstead agreed to all the factual allegations and accepted responsibility for his crimes.

### B. History and Characteristics of Mr. Milstead

Mr. Milstead's second conviction in Federal Court is taking place at a point where instead of planning for his retirement he is looking at a significant period of incarceration. Clearly, Mr. Milstead has brought about his own predicament on account of his illegal conduct that caused substantial damage to many unsuspecting people. However, Mr. Milstead does have a history of being a loyal and supportive husband and parent.

Throughout his life Mr. Milstead has not neglected the people that depended on him. In his efforts to be a supportive husband and parent, Mr. Milstead went through a series of job changes in search of better earning opportunities. Although he now has picked up his second federal conviction, Mr. Milstead has generally led a productive life for most of his adulthood. Mr. Milstead has two children from his marriage with Sharon Rhodes  He has a young son,

Daniel who is 12 years old, with his wife Judith Fiona of 16 years. Of the many painful consequences of his criminal behavior, his separation from his young son is the most difficult. He knows that on account of his incarceration he will be absent and miss out on many important events in Daniel's life. Mr. Milstead, wants to ensure that when he is released from prison, he will conduct himself lawfully so that his son will be spared additional separation and humiliation. Waiting to be sentenced for his second federal conviction is inconsistent and a far cry from the aspirations that Mr. Milstead set for himself when he was in high school, college and when entered the education field as a young man.

      **C.**    **The Sentence Should Reflect the Seriousness of the Offense**

Mr. Milstead recognizes that the Court must impose a sentence that reflects the seriousness of the offense, promotes respect for the law, and provides just punishment. Through his plea agreement and immediate decision to admit guilt, Mr. Milstead acknowledged the seriousness of his criminal conduct. When he is released from prison Mr. Milstead will be 62 years old. At that point he will begin a three-year period of supervised release and under a restitution order mandating payment of the large amount of money he swindled.

Supervised Release will subject Mr. Milstead to a strict regimen which will include reporting to a probation officer, submitting monthly financial reports, and mandatory drug testing. Furthermore, he will be required to report any change in his residence, or employment outside of the metropolitan Atlanta area. All of these factors will be constant reminder in his daily life that he has to conduct himself lawfully. After completion of three years of supervised release Mr. Milstead will be 66 years old. With that in mind, a prison sentence of thirty-seven months followed by three years of supervision would adequately meet the sentencing purposes

5

set forth in 18 U.S.C. § 3553(2)(a).

      **D.**      <u>**The Sentence Should Afford Adequate Deterrence to Criminal Conduct**</u>

      A prison sentence of thirty-seven months followed by three years of supervised release can adequately protect the public and result in sufficient deterrence.  A sentence that removes Mr. Milstead from the community for thirty-seven months, will eliminate the threat that he will continue to swindle and embezzle money from unsuspecting and innocent people.  When he is released from prison, Mr. Milstead will first go to a halfway house for approximately six months.  Immediately upon completion of his halfway house commitment he will have to report to a probation officer.  Instead of being treated and trusted like a respectable adult, Mr. Milstead will have to earn respect through compliance with supervision.  Mr. Milstead will certainly remember that failure to follow through with court ordered supervision will result in a new prison term.  That is an outcome that he wants to avoid at all costs.

      Mr. Milstead has thoughtfully reflected and arrived at a very sobering evaluation of his situation.  Since his arrest, he has experienced the full impact of his criminal conduct.  One life altering experience has been his detention in the D.C. jail.  Mr. Milstead never imagined that he would be housed with people charged with every conceivable violent crime.  Without question he has been scared by some of the individuals and situations that he has encountered and observed there.  Equally compelling has been the adversity he has put his wife and young son through.  He is guilt ridden because he can only stand by helplessly as his wife shoulders the responsibility of raising their son.

      It is safe to assume that recidivism for Mr. Milstead is unlikely and the requirements and supervision by a probation officer will deter him from new criminal conduct.  Seen in this light,

the forty-six months of incarceration that the government is requesting, would be a sentence that is "greater than necessary."

Since his arrest in June, Mr. Milstead has come to appreciate why he needs to respect the law. This new found respect for the law is the result of many factors related to his criminal case. The most obvious is the fact of a sentence that will keep him incarcerated until he is sixty-two years old which will be followed by another three years of supervision. Mr. Milstead understands that his poor judgement and greed will impact his life until his mid sixties. By all means the recent turn of events has provided Mr. Milstead with a unique insight and lesson on why he should respect the law and what will happen if he fails to do so. Finally, his obligation to pay $315,080.25 dollars in restitution requires significant responsibility, planning and the commitment to lead a modest life.

E.   **The Sentence Should Provide the Most Effective Rehabilitation Treatment**

The requested sentence of thirty-seven months followed by supervised release will most effectively support Mr. Milstead's rehabilitation. In view of his life long battle with alcoholism, Mr. Milstead's need for rehabilitation is significant and the Bureau of Prison has the resources to provide him with help. Specifically, BOP's Residential Drug Abuse Program (RDAP) (also more commonly known as the "500 hour program"), is a highly regarded counseling and treatment program that will help Mr. Milstead address his alcoholism. Thus, his rehabilitation needs can be provided and achieved through a combination of the requested prison sentence, participation in the BOP's RDAP program and the term of supervised release.

**CONCLUSION**

Mr. Milstead has made a series of terrible decisions at a point where he should have been thinking about his retirement and planning for the future care of his young son. His reckless decisions have deprived him of his liberty. Mr. Milstead cannot undo his crimes but he can commit to lawful behavior so that he will never jeopardize his freedom. In the context of Mr. Milstead's limited criminal history it is safe to assume that it's very unlikely that he will re-engage in any criminal conduct.

Mr. Milstead wants the Court to give him one opportunity so that he can demonstrate that he will leave prison to lead an exemplary life that is characterized by honesty, hard work and responsibility to his community and family. So that Mr. Milstead does not lose sight of his transgression, undersigned counsel requests that the Court sentence him to a prison term of thirty-seven months followed by a term of supervised release of three years.

Respectfully submitted,

A.J. Kramer
Federal Public Defender


_____/s/_____
Carlos J. Vanegas
Assistant Federal Public Defender
625 Indiana Ave., N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500